**WO**                                                                                               BL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Gonzales,            ) | No. CV 04-1264-PHX-SMM (GEE) |
|                            ) | |
| Plaintiff,       ) | **ORDER** |
|                            ) | |
| vs.                        ) | |
|                            ) | |
| Phoenix Police Department, et al., ) | |
|                            ) | |
| Defendants.      ) | |

David Gonzales filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against Phoenix Police Officers Todd Trynosky, Tim Norton, and Daniel Latham alleging that he was subjected to excessive force and deliberate indifference to his medical needs (Doc. #11). Defendants moved for partial summary judgment (Doc. #85). The Court will grant in part and deny in part Defendants' motion.

**I.   Background**

Plaintiff filed an Amended Complaint alleging that he was subjected to excessive force during an arrest after fleeing from police during a routine traffic stop (Doc. #11). Plaintiff contended that he was bitten by a police dog and beaten by Trynosky and Latham, that Norton failed to intercede, and that Defendants refused to timely provide him medical treatment (id.).[1] Defendants thereafter moved for partial summary judgment (Doc. #85).

---

[1] The Court previously dismissed the Phoenix Police Department as a defendant (Doc. #14).

Defendants concede that there are material issues of disputed facts as to whether Trynosky and Latham used excessive force against Plaintiff (id.). They argue, however, that they are entitled to summary judgment as to Plaintiff's claims against: (1) Defendants in their official capacities; (2) Norton as to Plaintiff's excessive force claim arising out of the dog bite; (3) Norton for his alleged failure to intercede while Trynosky and Latham allegedly beat Plaintiff; (4) Latham for alleged derogatory remarks; and (5) Defendants for deliberate indifference to Plaintiff's serious medical needs (id.).

## II. Summary Judgment Standard

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion, and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate that the fact in contention is material and that the dispute is genuine. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). A fact is material if it might affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250. The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Finally, when considering a summary judgment motion, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

### III. Factual Recitation

On March 26, 2004, Trynosky pulled Plaintiff over for driving a vehicle with suspended tags (Doc. #86, ex. A at 19). Plaintiff admitted that he had taken methamphetamine the night before and had been drinking alcohol that afternoon (id. ex. B at 25, 27). Plaintiff exited his vehicle, and Trynosky ordered him to get back into his car (id. Ex. A at 21-22). Plaintiff did not comply. Instead, Plaintiff informed Trynosky that his license was suspended (id. at 23; ex. B at 56). Trynosky then told Plaintiff to put his hands on the car and while attempting to handcuff him, Plaintiff spun away from Trynosky and fled (id. ex. A at 23; ex. B at 56). Trynosky radioed that he was on foot in pursuit, and several other officers, including Latham and Norton with his K-9 unit, Jake, arrived and began searching for Plaintiff (id. ex. A at 24-26). At that point, Trynosky was unsure whether Plaintiff was armed because while he was searching for Plaintiff, Trynosky was informed that other officers had found a dart gun, drugs, and a sword in Plaintiff's car (id. at 26, 29; ex. B at 53).

Plaintiff requested help from a neighborhood resident, but after the resident refused, Plaintiff hid under a car in a nearby carport (Doc. #86, ex. B at 57). The resident then notified Defendants that he observed Plaintiff run through his backyard (id. ex. C at 32). Jake lead Norton, Trynosky, and Latham toward the carport, and Norton announced that he was a police officer with a police dog, and told Plaintiff to make himself known to avoid the probability of him being bitten by Jake (id. ex. A at 36; ex. B at 60; ex. C at 32-33). The officers, following Jake's lead, entered the carport intending to access the resident's back yard (id. ex. A at 36, ex. C at 32). Norton held Jake's lead close (id. ex. C at 38).

The carport was tight quarters, and when the men got to the back of the carport, they realized that there was no exit to the backyard, so they turned around to leave (Doc. #86, ex. A at 42; ex. C at 39). At that point, the officers saw Plaintiff's hand come out from under the car (id. ex. A at 49; ex. C at 40-41). Jake immediately bit the hand, and Norton immediately pulled Jake away from Plaintiff and stood in the corner with Jake's front paws off the ground in order to control the dog (id. at 60; ex. B at 61; ex. C at 40-41, 45-46).

1    Plaintiff contends that he announced his presence under the car before putting his hands out;
2    Norton and Latham maintained they had no indication that Plaintiff was under the car until
3    Plaintiff stuck his hand out and Jake bit him (id. ex. C at 41; ex. D at 31).
4         Trynosky and Latham then pulled Plaintiff out from under the car.  According to
5    Plaintiff, despite his lack of resistence, Trynosky and Latham hit and kicked him, slammed
6    his head against the concrete and used racial epithets against him (Doc. #86, ex. B at 61-63).
7    Plaintiff asserts that as a result, he was bleeding, he blacked out several times, and was to be
8    dragged to the police car (id. at 63).  In contrast, Trynosky and Latham maintained that they
9    pulled Plaintiff out from under the car, handcuffed him, and escorted him to a police car (id.
10   ex. A at 49, 52; ex. C at 54; ex. D at 38, 40).  Defendants denied hitting, kicking, or stomping
11   Plaintiff (id. ex. B at 61; ex. D at 47-48).
12        Plaintiff testified that he requested medical attention on several occasions, but that
13   Trynosky told him that treatment was not a priority (Doc. #86, ex. B at 63-64, 66).
14   Defendants testified that they noticed Plaintiff was injured, but that the injuries were not
15   severe and Plaintiff refused medical attention (id. ex. A at 58; ex. C at 57).  Norton testified
16   that Plaintiff informed him that he had been bit. (id. ex. C at 57, 59).   It is undisputed that
17   Plaintiff was not immediately treated for any injuries but instead was taken to headquarters
18   where the gang unit interviewed him (id. ex. A at 60; ex. B at 66).  Plaintiff was subsequently
19   booked into Maricopa County where he was treated for injuries (id. ex. A at 61-64, 74).
20   **IV.   Official Capacity**
21        Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's
22   claims against them in their official capacities because Plaintiff cannot prove that his
23   constitutional rights were violated as a result of a policy, custom, or practice (Doc. #85).
24   Plaintiff argued that there was a policy, practice, and custom of allowing officers and canines
25   to conduct searches despite obvious deficiencies (Doc. #93).  Further, Plaintiff argued that
26   Jake had a problematic history in small spaces analogous to the carport and startled easily
27   and that Norton had a history of failing to properly control his dog (id.).  Plaintiff also argued
28   that there was a policy of allowing officers to use excessive force (id.).  Defendants reply that

1 there was no evidence of a policy, practice, or custom as asserted by Plaintiff (Doc. #106).
2 In addition, Defendants aver that there was no evidence that Norton and Jake did not meet
3 "minimum training requirements" (id.).

4 Even when a city or municipality is not a named defendant, a suit against a
5 municipality's police officers in their official capacities is sufficient to seek relief for an
6 unconstitutional policy, custom or practice of the city of municipality. Hart v. Parks, 450
7 F.3d 1059, 1071 (9th Cir. 2006); see also McMillian v. Monroe County, Ala, 520 U.S. 781,
8 785 n. 2 (1997) (providing that a suit against Defendants in their official capacity is the same
9 as a suit against the "entity of which [the] officer is an agent") (internal quotations omitted).
10 Accordingly, Plaintiff may seek damages from Defendants in their official capacity even
11 though Phoenix is not a named defendant.

12 A city or municipality may be held liable for a violation of an individual's
13 constitutional rights pursuant to a municipality or city's policy, practice or custom. Boyd v.
14 Benton County, 374 F.3d 773, 784 (9th Cir. 2004). To establish an unconstitutional policy,
15 practice, or custom, a plaintiff must prove that: (1) his rights were violated pursuant to a
16 formal government policy or a longstanding practice or custom that constituted the "standard
17 operating procedure" of the government entity; (2) the defendant who committed the
18 constitutional violation had final policy-making authority such that the challenged act
19 "constituted an act of official government policy"; or (3) a defendant with final
20 policy-making authority ratified a subordinate's allegedly unconstitutional action. Hopper
21 v. City of Pasco, 241 F.3d 1067, 1083 (9th Cir. 2001). Liability may attach "even for an
22 isolated constitutional violation . . . when the person causing the violation has final
23 policymaking authority." Botello v. Gammick, 413 F.3d 971, 979 (9th Cir. 2005); Hopper,
24 241 F.3d at 1083, n.1.

25 Plaintiff failed to establish an essential element of his claim against Defendants in
26 their official capacities. Plaintiff has presented no evidence that: (1) a municipal policy,
27 practice, or custom condoned the use of excessive force; (2) Defendants had final
28 policy-making authority such that their alleged use of excessive force constituted an official

- 5 -

governmental policy; or (3) municipal officials with final policy-making authority ratified the use of excessive force.

Similarly, Plaintiff has presented no evidence that: (1) a municipal policy, practice, or custom condoned active duty for K-9 units that did not met the minimum training requirements; (2) Defendants had final policy-making authority such that use of allegedly deficiently-trained K-9 units constituted an official governmental policy; or (3) municipal officials with final policy-making authority ratified the use of allegedly deficiently-trained K-9 units. Plaintiff merely proffered a few pages of a training report reflecting that Norton was determined to have a lapse of attention in monitoring his dog and that Jake had difficulties in an elevator. That evidence, however, does not prove that there was an official policy, practice, or custom of permitting poorly trained teams to conduct searches for which they are unqualified. In fact, the record demonstrates that during *training*, Norton and Jake worked to overcome certain issues. The record is devoid of any evidence to demonstrate that Norton and Jake failed to meet minimum standards or that such failure was the result of a policy, custom, or practice of the municipality. Further, there is no evidence that Norton was a policy-making official such that any allegedly improper act constituted an official governmental policy. Defendants will be granted to summary judgment on Plaintiff's claims against them in their official capacities.

## V.     Excessive Force

Defendants seek summary judgment on some of Plaintiff's excessive force claims based on qualified immunity. A court must make two distinct inquires when a defendant asserts qualified immunity: the "constitutional inquiry" and the "qualified immunity inquiry." See Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002). The "constitutional inquiry" asks whether, when taken in the light most favorable to the non-moving party, the facts alleged show that the official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). The "qualified immunity" inquiry asks whether the constitutional rights at issue were clearly established at the relevant time. Boyd,

1  374 F.3d at 778. A constitutional right is clearly established if the law put the officer on
2  notice that his conduct was clearly unlawful. Id.

3  "The Fourth Amendment guarantees the 'right of the people to be secure in their
4  persons, houses, papers, and effects against unreasonable searches and seizures.'" Haugen
5  v. Brosseau, 351 F.3d 372, 381 (9th Cir. 2003). A "seizure is ordinarily unreasonable in the
6  absence of individual suspicion of wrongdoing." City of Indianapolis v. Edmond, 531 U.S.
7  32, 37 (2000). "[T]he Fourth Amendment [also] prohibits the use of excessive force by
8  police in the course of apprehending suspected criminals." Haugen, 351 F.3d at 381. Claims
9  of excessive force are judged under the Fourth Amendment's objective reasonableness
10 standard. Brosseau, 543 U.S. at 197. Analysis of a Fourth Amendment excessive force
11 claim requires "balancing the 'nature and quality of the intrusion' on a person's liberty with
12 the 'countervailing governmental interest at stake' to determine whether the use of force was
13 objectively reasonable under the circumstances." Drummond v. City of Anaheim, 343 F.3d
14 1052, 1056 (9th Cir. 2003) (citations omitted); see also Graham v. Connor, 490 U.S. 386
15 (1989).

16 **A.     Dog Bite**

17 Plaintiff alleged that it was unreasonable to use Jake during the search, particularly
18 given Jake's history (Doc. #93). Additionally, he asserted that it was unreasonable to allow
19 Jake to bite a suspect who had surrendered (id.). Defendants argue that Norton did not
20 violate Plaintiff's constitutional rights by failing to prevent his dog from biting Plaintiff
21 (Doc. #85). Further, Norton never ordered Jake to attack Plaintiff, and he immediately pulled
22 the dog off Plaintiff (Doc. #106).

23 The use of a police dog can constitute excessive force. See Smith v. City of Helmet,
24 394 F.3d 689, 704 n. 7 (9th Cir.), cert. denied, 545 U.S. 1128 (2005); see also Mendoza v.
25 Block, 27 F.3d 1357, 1361-62 (9th Cir. 1994). However, no evidence in this case supports
26 that the force exerted by Jake and his handler was excessive. The undisputed evidence
27 establishes the following facts. Plaintiff evaded the police, and Defendants did not know
28 whether Plaintiff was armed. Norton and Jake walked through the carport with the intent of

1  accessing the backyard.  Norton was unaware of Plaintiff's presence under the car in the
2  carport.  Before entering the carport, Norton announced their approach and that he had a dog
3  who might bite if Plaintiff failed to make himself known.  And while walking through the
4  carport, Norton held Jake close by his lead.  Plaintiff, thus alerted to Jake's presence, decided
5  to surrender and stuck his arms out from under the car.  Regardless of whether Plaintiff first
6  announced his presence, the undisputed evidence proves that Jake was startled when Plaintiff
7  thrust his hands out from under the car and Jake reacted by unexpectedly and suddenly biting
8  Plaintiff.  Norton immediately pulled Jake off Plaintiff and stepped away to control Jake.

9        The summary judgment evidence proves that a reasonable jury could not conclude that
10  Norton used excessive force.  Norton exercised control over Jake during the search but Jake
11  bit Plaintiff afer he was startled by Plaintiff.  Norton never ordered Jake to attack Plaintiff
12  and pulled Jake away from Plaintiff to prevent further bites.  There is simply no evidence that
13  Norton failed to act reasonably in handling Jake under the circumstances.  Norton will be
14  granted summary judgment as to Plaintiff's claim that Norton used excessive force by not
15  preventing Jake from biting Plaintiff.

16        **B.**    **Failure to Intercede**

17        Defendants seek summary judgment on Plaintiff's claim that Norton's failure to
18  physically or verbally intercede and attempt to prevent the other officers from beating him
19  makes Norton liable for excessive force (Doc. #85).  Defendants argue that Norton lacked
20  the means or opportunity to prevent the alleged beating (id.).

21        "'[P]olice officers have a duty to intercede when their fellow officers violate the
22  constitutional rights of a suspect or a citizen' . . . if they had an opportunity to intercede."
23  Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) (citations omitted).  Accepting
24  the facts in the light most favorable to Plaintiff, the non-moving party, Norton is not entitled
25  to summary judgment as to Plaintiff's claim that Norton failed to intercede when Trynosky
26  and Latham were using excessive force.  Defendants introduce testimony in which they deny
27  the use of excessive force.  They also argue that Norton could have done nothing to protect
28  Plaintiff as he was attempting to control Jake.  However, Plaintiff testified that he was

- 8 -

severely beaten by Trynosky and Latham while Norton watched. Plaintiff argued that Norton could have intervened physically or, at the very least, verbally. Whether Plaintiff was hit, kicked, and stomped, and whether Norton could have intervened to prevent the alleged beating by verbally ordering Trynosky or Latham to cease beating Plaintiff or by radioing other officers to intervene are disputed issues of material fact. Further, Norton is not entitled to qualified immunity because clearly established law imposes a duty on Norton to intercede if he had the opportunity to do so. See Cunningham, 229 F.3d at 1289. Thus, Defendants' Motion for Summary Judgment will be denied on this claim.

### C. Derogatory Remarks

Defendants argue that Latham's alleged use of derogatory comments, as a matter of law, do not violate Plaintiff's constitutional rights (Doc. #85). Plaintiff concedes that his constitutional rights were not violated by the use of derogatory racial remarks (Doc. #93 at 10 n. 1). Accordingly, Defendants are entitled to summary judgment on this claim.

## VI. Deliberate Indifference to Medical Needs

Defendants argue that they are entitled to summary judgment on Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs, i.e., treatment for the dog bite and the alleged beating (Doc. #85). Defendants argue that Plaintiff's injuries were not serious, and any delay in treatment did not exacerbate the injuries (id.). Plaintiff maintained that he was not provided timely medical treatment (Doc. #93). Plaintiff argued that he suffered various injuries and has been diagnosed with post-concussion syndrome (id.). Defendants reply that there was no evidence that any delay in treatment injured Plaintiff (Doc. #106).

To demonstrate that Defendants were deliberately indifferent to Plaintiff's medical needs, Plaintiff "must show that 'the official [knew] of and disregard[ed] an excessive risk to inmate health.'" Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004) (citing Farmer v. Brennan, 511 U.S. 825, 838 (2004)). "Further, the deliberate indifference must be both 'purposeful,' and 'substantial' in nature.'" Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 525 (9th Cir. 1999) (internal citations omitted). Defendants would be deliberately indifferent

- 9 -

1    to Plaintiff's "serious medical needs [if] they 'deny, delay, or intentionally interfere with
2    medical treatment.'"  Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (citations
3    omitted).
4         Plaintiff testified that he suffered from a dog bite and was bleeding and blacking out
5    as a result of Trynosky and Latham's actions. Plaintiff maintained that he requested medical
6    intervention from various officers, including Trynosky. Despite his allegedly obvious
7    injuries and requests, Plaintiff was not provided medical treatment for several hours but
8    instead was transported to headquarters where he was interviewed by the gang unit. Plaintiff
9    introduced evidence that as a result of the alleged beating, he suffered from post-concussion
10   syndrome.
11        Defendants testified that Plaintiff was not obviously injured, but only suffered from
12   a dog bite. Defendants maintained that Plaintiff never requested medical intervention, and
13   when he finally was treated, Plaintiff needed minimal treatment and was healed within three
14   weeks.
15        There is a material question of disputed fact as to the extent of Plaintiff's injuries, i.e.
16   whether they were serious. Construing the evidence in the light most favorable to Plaintiff,
17   he was obviously injured and requested medical attention, which he did not receive for
18   several hours while Defendants investigated the incident. Further, again construing the
19   evidence in the light must favorable to Plaintiff, he had to receive medical treatment for a dog
20   bite and continues to suffer from post-concussion syndrome. Moreover, at the time of the
21   incident, there was clearly established law that a delay in providing a seriously injured
22   arrestee medical treatment constituted deliberate indifference to his serious medical needs,
23   preventing summary judgment based on qualified immunity. See Lopez, 203 F.3d at 1132.
24   For these reasons, Defendants will be denied summary judgment on this claim.
25        Therefore,
26        **IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment
27   (Doc. #85) is **GRANTED** in part and **DENIED** in part as follows:
28        (1) the motion is **GRANTED** to the extent that:

   (a) Plaintiff's claims against Trynosky, Latham, and Norton in their official capacities are **DISMISSED**.

   (b) Plaintiff's claim that Norton used excessive force against him by allowing Jake to bite him is **DISMISSED**.

   c) Plaintiff's claim that his constitutional rights were violated by Defendants' alleged use of derogatory language is **DISMISSED**.

 (2) the motion is otherwise **DENIED.** Plaintiff may proceed as to the following claims:

   (a) Plaintiff's claim that Trynosky and Latham violated his constitutional rights when they used excessive force in arresting him.

   (b) Plaintiff's claim that Norton violated his constitutional rights by failing to intercede.

   c) Plaintiff's claim that Trynosky, Latham, and Norton violated his constitutional rights by being deliberately indifferent to his medical needs when they failed to promptly provide him medical treatment.

 DATED this 28th day of June, 2007.

_____
Stephen M. McNamee
United States District Judge